UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ROBERT J. deVILLERS        :
                                  :
        v.                      :       C.A. No. 13-173ML
                                  :
BLUE CROSS & BLUE          :
SHIELD OF RHODE ISLAND    :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

      This is a <u>pro se</u> action brought by Robert J. deVillers ("Plaintiff") against Blue Cross & Blue Shield of Rhode Island ("BCBS") alleging breach of contract.  Because the action arises out of an employer-sponsored group health insurance plan, Plaintiff's claim is governed by the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 <u>et seq.</u> ("ERISA").  In his Amended Complaint, Plaintiff alleges that BCBS breached the health insurance policy covering his family by failing to pay the costs (totaling $47,608.00) for "residential rehabilitation services" provided to his then minor son[1] from August 2011 to June 2012 by Alternative Youth Care in Kalispell, Montana ("AYC").  Plaintiff's son entered the AYC program after being discharged from an inpatient rehabilitation facility known as Hazelden Center for Youth located in Minnesota.[2]

---

[1] BCBS contends that Plaintiff lacks standing to sue for reimbursement for services provided to his "now-adult son." (Document No. 20 at p. 13).  BCBS relies primarily upon <u>Lightfoot v. Principal Life Ins. Co.</u>, No. CIV-11-130-M, 2011 WL 2036649 (W.D.Ok. 2011).  However, the <u>Lightfoot</u> case is plainly distinguishable because it involved both a father and his <u>adult</u> son suing for benefits under ERISA.  The father paid the medical bills on his adult son's behalf, and the Court held that the father did not have standing to bring an ERISA claim for benefits owed to his adult son.  Here, it is undisputed that the son was a minor and dependent of Plaintiff at all relevant times, that Plaintiff paid for the services he obtained for his minor son, and that both Plaintiff and the minor son were participants and beneficiaries of the BCBS health plan in issue.  Thus, Plaintiff suffered an injury-in-fact sufficient to give him standing.  BCBS's standing challenge is neither legally nor factually supported and should be rejected.

[2] Although BCBS initially denied coverage for Hazelden, Plaintiff appealed and ultimately obtained coverage through the administrative appeal process.

BCBS has moved for summary judgment arguing that its denial of benefits must be affirmed under ERISA's deferential standard of review because it "reasonably concluded" that Plaintiff "failed to provide any information to establish that AYC was an 'eligible provider' of covered services." (Document No. 20 at pp. 5, 10). Alternatively, BCBS argues that the Plan expressly excludes coverage for "halfway houses or other residential facilities" such as AYC. Id. at p. 12. In his Opposition to BCBS's Motion, Plaintiff argues, in part, that BCBS "did not pay for any of [his son's] therapy or counseling while attending AYC" and notes that the "majority of the costs at AYC ($26,900.00) were for counseling and therapy yet BCBS has refused to cover any of these costs." (Document No. 23 at pp. 4, 9). In its Reply, BCBS argues that Plaintiff cannot now amend his claim to obtain partial recovery by parsing out portions of a properly denied claim. (Document No. 25 at p. 5). It also contends that, even if any counseling and therapy services were provided by "eligible providers" and might be reimbursable, the amount requested by Plaintiff "would far exceed any benefit potentially available under the Plans for those services" since they are subject to out-of-network limitations. Id. Finally, BCBS asserts that any partial reimbursement determination must be made in the first instance by the Plan Administrator, not by this Court sitting in review pursuant to ERISA. Id. at n.3.

**Discussion**

**A.      Procedural History**

A hearing was held on BCBS's Motion for Summary Judgment on October 16, 2013. After further review of the Administrative Record, the Court issued an Order For Further Briefing on November 14, 2013. (Document No. 27). The Order directed the parties to submit Supplemental Briefs addressing the following two issues:

1.      Is this Court precluded by the administrative exhaustion requirement read into ERISA from considering, in the context of this pending case, the issue of Plaintiff's son's entitlement, if any, to coverage, out-of-network or otherwise, for any of the outpatient therapy or counseling services he received while residing at AYC?; and

2.      Does this Court have the authority under ERISA to order a remand of this claim to the Plan Administrator for further development of the Administrative Record and a determination as to whether Plaintiff's son was entitled to coverage, out-of-network or otherwise, for any of the outpatient therapy or counseling services he received while residing at AYC?

The Supplemental Briefs have been filed and reviewed by the Court.  (Document Nos. 28, 30 and 32).

**B.      Standard of Review**

Both sides appear to agree that this dispute boils down to whether BCBS abused its discretion in denying Plaintiff's claim.  This standard of review applies "[w]hen an ERISA plan gives an administrator discretionary authority to determine eligibility for benefits or construe the plan's terms."  D&H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co., 640 F.3d 27, 34 (1st Cir. 2011). Here, the Plan gives BCBS discretionary authority to interpret the Plan, to determine eligibility for benefits and to determine medical necessity.  See Doe v. Blue Cross & Blue Shield of R.I., 1:11-cv-00647-M, Bench Decision Rendered on May 30, 2013 (D.R.I.).  In particular, Section 1.1 of the plans provides that "[Blue Cross] will make a determination regarding your eligibility for benefits...."  (Administrative Record "AR" at 00229; see also Document No. 21 at ¶ 4).  Additionally, Section 1.4 states that a service is only covered under the plans "if it is medically necessary.  We review medically [sic] necessity in accordance with our medicl [sic] policies and

related guidelines."  (AR at 00229-00230 (emphasis in original); <u>see also</u> Document No. 21 at ¶ 5).

That section goes on to provide that "[t]his <u>agreement</u> provides coverage for health care services that

we have reviewed and determined are eligible for coverage.  Health care services which we have

not reviewed or which we have reviewed and determined are not eligible for coverage are not

covered under this <u>agreement</u>."  (AR at 00230 (emphases in original); <u>see also</u> Document No. 21 at

¶ 5).  Likewise, Section 3.2B provides that "[t]his <u>agreement</u> does NOT cover <u>chemical dependency</u>

services provided in any covered <u>program</u> that are reviewed by us and we decide are recreational

therapy programs, wilderness programs, or non-clinical services.  We review the program...to decide

whether [it]...meets our medical guidelines and criteria."  (AR at 00246; <u>see also</u> Document No. 21,

p. 2-3, ¶ 6).

      The administrator's reading need not be the best interpretation of the plan, nor come to the

same conclusion the Court would if analyzing the plan on its own.  <u>D&H Therapy</u>, 640 F.3d at 35.

A benefit determination is within the discretion of the administrator as long as it is reasoned and

supported by substantial evidence.  <u>Id.</u>  Evidence is substantial where it is "reasonably sufficient to

support a conclusion."  <u>Desrosiers v. Hartford Life & Accident Ins. Co.</u>, 515 F.3d 87, 92 (1st Cir.

2008) (<u>quoting</u> <u>Wright v. R.R. Donnelley & Sons Co. Grp. Benefits Plan</u>, 402 F.3d 67, 74 (1st Cir.

2005)).  Where the administrator both pays benefits and determines eligibility for claims, as is the

case here, the Court must consider this inherent conflict of interest in applying the abuse of

discretion standard.  <u>Denmark v. Liberty Life Assurance Co. of Boston</u>, 566 F.3d 1, 9 (1st Cir. 2009)

(holding that "courts should review benefit-denial decisions for abuse of discretion, considering any

conflict as one of a myriad of relevant factors").  This dual role is known as a "structural conflict"

as opposed to a situation where a fiduciary's decision was in fact motivated by an actual conflict of

interest.  Id. at 5 n.2.  Thus, BCBS's interpretation is afforded deference and should only be overturned if found to be an abuse of discretion, recognizing that the Court must be cognizant of the dual role being played by BCBS and the potential conflict this creates.

### C.   Scope of the Claim

BCBS argues that Plaintiff's claim has consistently been to recover reimbursement for the entirety of AYC's charges,[3] and that consideration of reimbursement for a subset of AYC's charges at this late stage would improperly interject a new claim on appeal in violation of ERISA's administrative exhaustion requirements.  Although ERISA itself does not contain a statutory exhaustion requirement, it is well-established that a beneficiary under an ERISA plan generally must exhaust the administrative appeal remedies provided by the plan before filing suit.  Drinkwater v. Metro. Life Ins. Co., 846 F.2d 821, 825 (1st Cir. 1988).  "A plaintiff has not exhausted his administrative remedies on an issue if he fails to raise it before the plan administrator."  Harris v. Trustmark Nat'l Bank, 287 Fed. Appx. 283, 288 (5th Cir. 2008).  Thus, the issue for exhaustion purposes is what was the scope of Plaintiff's claim to BCBS.

Initially, there is no dispute that Plaintiff presented and exhausted his claim to recover the full cost of his son's stay at AYC including housing and counseling services.  (See, e.g., AR at 00180).  There is also no dispute that BCBS considered and denied the claim.  BCBS concluded that the information provided to it by AYC and Plaintiff was insufficient to "demonstrate that the program offered at AYC meets BCBSRI eligibility and/or credentialing requirements for an acute substance abuse residential program."  (AR at 00122).

---

[3] In his Amended Complaint, Plaintiff describes his claim as one "for coverage for Plaintiff's son...for the residential rehabilitation services provided by AYC."  (Document No. 11 at ¶ 12).

Plaintiff has not met his burden of establishing that BCBS's refusal to pay for the entirety of AYC's services was arbitrary and capricious on this record.  The Plan covers certain inpatient chemical dependency treatments including "Acute Rehabilitation or Residential treatment."  (AR at 00246).  It also gives BCBS the discretion to "review the program, hospital or inpatient facility and the specific services provided to decide whether a program, hospital or inpatient facility meets our medical guidelines and criteria."  Id.  By letter dated November 8, 2012, BCBS informed Plaintiff that the information he submitted regarding AYC "was not sufficient to demonstrate the program [his son] attended meets BCBSRI's requirements for health care benefit coverage."  (AR at 00131).  Plaintiff was given notice of the requirements and a fair opportunity to submit information demonstrating AYC's credentials.  However, the Administrative Record reflects that BCBS's determination that his submissions were insufficient was reasonable and supported by the record.

Although Plaintiff's pro se arguments are difficult to parse, his primary challenge to BCBS's denial appears to be that its representative erroneously "used the requirements needed to support the validity of an 'in-patient chemical detoxification' facility or an 'acute rehabilitation' facility and applied and added these requirements to a 'residential treatment' facility."  (Document No. 23 at p. 7). In other words, he argues that the word "Acute" in the Plan modifies only "Rehabilitation" and not "Residential Treatment."  However, the Plan unambiguously defines covered inpatient chemical dependency services as including "Acute Rehabilitation or Residential treatment" and the Summary of Benefits uses the terms "Residential/Rehabilitation" interchangeably.  (AR 00212 and 00246). Plaintiff has not shown that BCBS acted arbitrarily or capriciously in its interpretation that the word "Acute" in the Plan modified, and thus applied to, both "Rehabilitation or Residential treatment."

(See AR 00122).   BCBS also observed that AYC's website described itself as a "long-term, transitional living, half-way house..." and that it is licensed as a "residential treatment low intensity" program and not an "acute substance abuse residential treatment" facility.  (AR 0052 and 00122).

Although BCBS wants its eligibility determination about AYC to end the case, the Court concludes that Plaintiff's administrative claim can reasonably be interpreted to include one for outpatient chemical dependency treatment services provided to Plaintiff's son while a resident at AYC.  A close review of the Administrative Record reveals that this partial reimbursement issue is not a new one and was never fully reviewed and determined by BCBS.  For instance, an appeal note dated September 7, 2012 reflects that "[t]herapy sessions performed in October, November and December were paid according to the member's OON [out-of-network] benefits, but January – May denied as no auth obtained."  (AR at 0071; see also AR at 008-009).  A subsequent note dated September 18, 2012 indicates that "[a]ll claims from in-house counseling sessions rendered from 8/23/11 – 5/31/12 have been disassociated from case as member was not looking for separate reimbursement for those services.  Only the [total] monthly fees charged from August 2011 – May 2012."  (AR at 003).  Thus, early in the claims handling process, BCBS itself interpreted Plaintiff's claim as including a claim for outpatient therapy sessions.

In its denial letter dated January 11, 2013, BCBS denied coverage for the AYC program but informed Plaintiff that "[i]f, in fact, your son received individual outpatient medically necessary clinical services delivered by an independent, licensed behavioral health provider, we would consider coverage for those services under your outpatient chemical dependency benefit."  (AR at 00123).  This suggests that BCBS was aware that the counseling sessions could possibly be covered under the Plan, but opted to narrowly view Plaintiff's claim as an all or nothing request for payment

of the entire AYC bill.  There is no indication in the record that Plaintiff formally resubmitted a claim for partial reimbursement, even though he had previously provided BCBS, by transmittal letter dated June 14, 2012,  with "the monthly reports for his [son's] in house counseling sessions for reference purposes."  (AR at 00164).  These reports provide the date, session type, counselor name and credentials, the amount charged for each session and applicable CPT billing codes.  (AR at 00154 to 00163).[4]  In fact, there is a notation in the record that "Member submitted claims to us which reflects a monthly charge coded as 'Aftercare' as well as daily therapy sessions."  (AR at 0071) (emphasis added).  Furthermore, the Explanation of Benefits ("EOB") forms sent by BCBS to Plaintiff are broken down by the individual therapy session charges by date and amount and not just the total monthly cost of AYC which is inconsistent with BCBS's position that Plaintiff's claim was limited to the entirety of AYC's billings.  (AR at 0013-0028).

The deferential standard of review applicable under ERISA "does not deprive a court of its discretion to formulate a necessary remedy when it determines that the plan has acted inappropriately."  Cook v. Liberty Life Assurance Co. of Boston, 320 F.3d 11, 24 (1st Cir. 2003).  Here, the Court concludes that BCBS acted inappropriately on this record by not considering and making a determination as to whether any of the therapy or counseling services Plaintiff's son received while residing at AYC were covered and reimbursable under the Plan.

In Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 115 (2008), the Supreme Court indicated that ERISA places a "special standard of care" upon a plan administrator to "'discharge his duties...solely in the interests of the participants and beneficiaries' of the plan."  (quoting 29

___

[4] The Record contains an entry from a BCBS representative who indicated on September 10, 2012 that "[t]he invoices submitted by subscriber shows daily sessions (group, intervention counseling and 1-on-1)" and she questions whether "these sessions [should] be paying at all."  (AR at 0068).

U.S.C. § 1104(a)(1)).  ERISA also requires every employee benefit plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  29 U.S.C. § 1133(2).  The underlying regulations provide that a "full and fair review" must "take[ ] into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination."  29 C.F.R. ¶ 2560.503-1(h)(2)(iv).  The First Circuit has identified one of the aims of these requirements as providing a "nonadversarial dispute resolution process."  <u>Bard v. Boston Shipping Ass'n</u>, 471 F.3d 229, 239-240 (1st Cir. 2006).

"Where...review is under the arbitrariness standard, the ordinary question is whether the administrator's action <u>on the record before him</u> was unreasonable."  <u>Liston v. Unum Corp. Officer Severance Plan</u>, 330 F.3d 19, 24 (1st Cir. 2003) (emphasis added).  Here, the issue of partial reimbursement is prominent in the record and, in fact, it indicates that "therapy sessions performed in October, November and December were paid according to the member's OON [out-of-network] benefits" but BCBS later reversed course and treated the claim as an all or nothing claim for the entirety of AYC's billings.  (<u>See</u>, <u>e.g.</u>, AR at 0071).  In <u>Zarro v. Hasbro, Inc.</u>, 896 F. Supp. 2d 134, 144 (D.R.I. 2012), Senior District Judge Lagueux held that a participant's failure to raise an issue before the Plan Administrator was not necessarily fatal to raising it in ERISA litigation.  Because the benefit in issue was related to the primary issue under consideration of the participant's entitlement to retirement benefits, Judge Lagueux concluded that "the Plan Administrator was responsible for reviewing [the participant's] eligibility for this benefit when he made his original claim for benefits, and there is no evidence in the record that this review occurred."  <u>Id.</u>  He relied

upon language in the Plan (based upon 29 U.S.C. § 1104(a)) "that the Plan Administrator shall at all times discharge his duties solely in the interest of Participants and their Beneficiaries, for the exclusive purpose of providing benefits to Participants and their Beneficiaries." Id. He concluded that the "best course of action [wa]s to remand the issue...to the Plan Administrator for full consideration of [the participant's] eligibility for th[e] benefit" in issue. Id. at 145.

Here, not only were the counseling sessions identified as a subset of the AYC billings, but BCBS treated them separately at first and, in fact, paid for them for a period of time.  Thus, the argument for remand is actually stronger in this case than in the Zarro case discussed supra.  See Gammell v. Prudential Ins. Co. of Am., 600 F. Supp. 2d 227, 241 (D. Mass. 2008) ("Remand is frequently the appropriate response where the record dos not support the conclusion that claimant is unequivocally entitled to benefits, but only that more information is needed.").

**D.    Conclusion**

For the foregoing reasons, I recommend that BCBS's Motion for Summary Judgment (Document No. 20) be GRANTED in part affirming its decision that AYC was not a covered inpatient residential program and DENIED in part REMANDING[5] the case to the Plan Administrator for further development of the record and a determination as to whether Plaintiff's son was entitled to coverage, out-of-network or otherwise, for any of the outpatient therapy or counseling services he received while residing at AYC between August 2011 and June 2012.  I also recommend that the District Court retain jurisdiction pending BCBS's review on remand. See Zarro, 896 F. Supp. 2d at 145 (retaining jurisdiction on remand until case "fully resolved"); and Spanos v.

---

[5]  This Recommendation should not be viewed as suggesting in any way that any outpatient services received by Plaintiff's son are or are not reimbursable under the BCBS Plan but only that BCBS follow through on its offer to Plaintiff on January 11, 2013 to "consider coverage for [certain] services under [the] outpatient chemical dependency benefit" which was never done.  (AR at 00123).

TJX Companies, Inc., 220 F. Supp. 2d 67, 75 n.11 (D. Mass. 2002) (noting in ERISA remands that the "preferred course of action is for the Court to retain jurisdiction over the matter but not to enter a final judgment").

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/  Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 11, 2014